UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS J. MORIARTY, Trustee on behalf of the TEAMSTERS LOCAL UNION NO. 727 PENSION FUND; THE TEAMSTERS LOCAL UNION NO. 727 HEALTH AND WELFARE FUND; and THE TEAMSTERS LOCAL UNION NO. 727 LEGAL AND EDUCATIONAL ASSISTANCE FUND, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 04 C 4368 |
| HURSEN HOLDINGS CORPORATION, an Illinois corporation d/b/a HURSEN FUNERAL HOME, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on the parties' cross-motions for summary judgment. For the reasons set forth below, Plaintiff's motion is granted and Defendant's motion is denied.

## BACKGROUND

Plaintiff Thomas Moriarty ("Moriarty") serves as trustee for the Pension (the "Pension Fund"), Health and Welfare (the "Health and Welfare Fund"), and Legal and Educational Assistance Funds (the "Legal Fund") (referred to collectively as the

"Funds") of the Teamsters Local Union No. 727 (the "Union"). Defendant Hursen Holdings Corporation ("Hursen") owns and operates the Hursen Funeral Home. Hursen is an employer member of the Funeral Directors Services Association of Greater Chicago ("FDSA"), a multi-employer organization which collectively bargains on behalf of its members with the Union. Throughout the relevant time period in this action, two collective bargaining agreements existed between the Union and the FDSA, one covering Funeral Directors and Embalmers and another covering Auto Livery Chauffeurs.[1] These collective bargaining agreements, along with the Funds' trust agreements, obligate the FDSA and other employer members to contribute to the Funds on a monthly basis for all bargaining unit work. Bargaining unit work under the Livery Chauffeurs Agreement consists of auto livery chauffeur services, including driving funeral vehicles and the transportation of deceased individuals. When such bargaining unit work is performed, the Funds require employers to identify the employees for whom contributions are owed, assess the total amount of time worked, and remit the corresponding contributions.

Under the collective bargaining agreements, FDSA member-employers also agree to be bound by the trust agreements creating the Funds. Under the Funds' trust agreements, trustees reserve the right to examine and audit the books and records of

---

[1] In 2002, these agreements were consolidated into a single collective bargaining agreement.

each employer. Thus, if an audit identifies delinquent contributions, the trust agreements authorize the trustees to recover such amounts.

On February 27, 2003, Bansley & Kiener LLP, an auditor retained by Moriarty, completed a payroll audit of Hursen to determine Hursen's compliance with contractual and statutory contribution obligations. The audit revealed Hursen's allegedly delinquent contributions to the Funds for work performed by employees of Leyden Livery ("Leyden") during the time period of August 1, 1996 through June 30, 2002 (the "audit period"). Specifically, the audit noted a $3,030.40 delinquency to the Health and Welfare Fund, a $2,360.30 delinquency to the Pension Fund, and a $42.60 delinquency to the Legal and Educational Assistance Fund. Although not a FDSA employer, Leyden employed livery drivers bound by the collective bargaining agreement between the FDSA and the Union. During the audit period, Hursen retained Leyden to perform livery and transportation of deceased individuals for the funeral home. Hursen, although admitting its failure to make contributions for work performed by Leyden employees, asserts that it was not required to make any such contributions.

Following unsuccessful attempts to collect the allegedly delinquent contributions, Moriarty filed an action against Hursen claiming violations under Section 502(a)(3) of the Employee Retirement Income Security Act ("ERISA") and

Section 301(a) of the Labor Management Relations Act ("LMRA"). Both parties now move for summary judgment.

**LEGAL STANDARD**

The standard for summary judgment is well-established. A motion for summary judgment can only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. The court's function is not to judge the credibility of the evidence, but rather to determine if "there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The party moving for summary judgment has the burden of establishing that there is no genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). In determining whether a genuine issue of material fact exists, the court must view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Summary judgment is appropriate only when the court determines that no reasonable jury could find for the nonmoving party. McKenzie v. Illinois Dept. of Transp., 92 F.3d 473, 479 (7th Cir.1996).

When parties file cross-motions for summary judgment, each motion must be assessed independently, in light of the burden of proof that each party would bear on

an issue at trial. Santaella v. Metropolitan Life Ins. Co., 123 F.3d 456, 461 (7th Cir. 1997). The filing of cross-motions for summary judgment does not operate as a waiver of trial; rather, each motion evidences only that the movant "thinks he is entitled to judgment without trial, but wants a trial if the judge disagrees." Miller v. LeSea Broadcasting, 87 F.3d 224, 230 (7th Cir. 1996). Finally, summary judgment is appropriate where a dispute concerns an interpretation of a written contract. ICEBU v. Hyster-Yale Materials Handling, 83 F.3d 930, 923-33 (7th Cir. 1996). Where an agreement's language is unambiguous, the court may determine meaning as a matter of law. Illinois Conference of Teamsters and Employers Welfare Fund v. Mrowicki, 44 F.3d 451, 478 (7th Cir. 1994). With these considerations in mind, we turn to the parties' motions.

## DISCUSSION

The present case stands in an unusual posture. In all court proceedings, William Pierson ("Pierson"), a nonattorney, has appeared on behalf of Hursen. According to representations Pierson has made to this court, he is one of two shareholders of Hursen, a closely held corporation. To date, no attorney has filed an appearance on behalf of Hursen. Although certain limited circumstances allow for a nonattorney to represent a corporation, the general rule is that a corporation cannot appear without an attorney.

See Strong Delivery Ministry Ass'n v. Board of Appeals of Cook County, 543 F.2d 32 (7th Cir. 1976).

During a status hearing held on June 9, 2005, we admonished Pierson that Hursen had until June 16 to either obtain counsel, or supply a notarized affidavit in which the individual owners of Hursen acquiesced to Pierson representing the corporation before the court. Neither event has occurred. Thus, Hursen has not responded to Moriarty's first amended complaint and is in default. Accordingly, Moriarty is entitled to judgment in its favor. In addition, as explained below, the merits entitle Moriarty to judgment as a matter of law.

When parties agree to contribute to pension plans, ERISA Section 515 requires that they do so consistent with the law and to the extent promised. Central States Pension Fund v. Hartlage Truck Service, 991 F.2d 1357, 1360 (7th Cir. 1993). The first inquiry is to determine whether Hursen agreed to make contributions under the collective bargaining agreements. Initially, Hursen admits that it was a FDSA member during the audit period and that it was bound by the collective bargaining agreements between the FDSA and the Union. Hursen further indicated assent to the collective bargaining agreements and trust agreements when it submitted signed contribution reports throughout the audit period. Thus, there can be no reasonable dispute that

Hursen was bound to the collective bargaining agreements and trust agreements during the audit period.

Next, we turn to the substance of the various agreements, which determines Hursen's obligations to the Funds. Central States, S.E. and S.W. Areas Pension Fund v. Kroger Co., 73 F.3d 727, 730 (7th Cir. 1996). When examining agreements in the context of an ERISA claim courts apply federal common law rules of interpretation. See Central States, 79 F.3d at 731-32. Courts look to the agreement's plain text and assess it in its entirety. Id. In addition, a "document should be read to give effect to all of its provisions and to render them consistent with each other." Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 63 (1995).

In the 1995 Restated Pension Plan, "Employer" is defined as any FDSA member "with respect to those Employees on whose behalf . . . contributions are made to the Pension Fund." The term "Employee" is defined as a person in "Covered Employment" including "*any* Employee of an Employer for whose employment the Employer is obligated by an Agreement with the Union to contribute to the Pension Fund" (emphasis added). The plain text makes no distinction between persons directly employed by a FDSA member versus a FDSA member's mere utilization of any employee covered by the agreements. Thus, the plain text of the trust agreement allows for the interpretation that contributions on behalf of any Union employee performing

work for a FDSA member are required. The language warrants no other result because limiting the definition of employee to an FDSA member's own employees, as Hursen suggests, would render the entire agreement ineffectual. Further, if the FDSA employer-member intended to make pension contributions for its own employees only, the agreement would have contained language to that effect. Absent such language, the agreement is expansive and would include all employees represented by the Union, regardless of whether their services were directly solicited by the FDSA employer.

Interpretation of the Auto Livery Chauffeurs collective bargaining agreement in force from March 1, 1995 to February 28, 1998 leads to the same conclusion. In the definition section of this agreement, "Employer" is defined as the FDSA and "Employee" is defined as *any* Union auto livery chauffeur "*in the employ* of an Employer member" (emphasis added). Further, the agreement requires an employer to make contributions to the Funds on behalf of "each Employee covered by this Agreement who is *in the employ* of such Employer member" (emphasis added). Given the purpose of the collective bargaining agreement as a whole, the phrase "in the employ of" must be read expansively to cover not only persons directly employed by an FDSA member-employer, but also Union employees performing bargaining unit work for an FDSA member-employer.

The intent of the agreement to cover all Union members and not merely those in direct employment, is further manifested in Article VIII of the agreement, labeled "Extra Chauffeur." This particular section provides minimum rates of pay when member-employers temporarily utilize the services of third-party chauffeurs. Since this provision applies to the types of workers for which Hursen contends that contributions need not be made, it is significant that Article VIII lacks any language relieving employer-members of their contribution obligations. In fact, the express language of Article V of the agreement obligates member-employers to make contributions for extra chauffeurs. Moreover, the agreement as a whole does not contain language that would limit the definition of "Employee" in terms of a specific relationship to a member-employer. Rather, the plain text extends coverage to any Union member performing the duties of a chauffeur, regardless of specific employment relationships. Given the critical nature of this distinction, had the parties to the collective bargaining agreement intended to restrict the benefits of Union membership to persons directly employed by FDSA member-employers, such an intention would be expressly reflected; that is not the case here.

In addition, examination of the parties' past dealings leads to the same conclusion. When considering the intent of parties to a collective bargaining agreement, the court may examine past bargaining history so long as it is not

inconsistent with the terms of the contract.  <u>Bhd. of Maint. of Way Employees v. Atchison</u>, 138 F.3d 635, 640-41 (7th Cir. 1997).  Here, both John Coli, the Union's chief negotiator for the Livery collective bargaining agreements, and Thomas Moriarty, the FDSA's chief negotiator for previous collective bargaining agreements, have asserted that the Union and FDSA have historically agreed that the collective bargaining agreements require contributions for all bargaining unit work, regardless of employment status or Union membership.  Hursen presents no evidence to rebut the parties' historical interpretation of the agreements.  Indeed, the July 1, 2002 Livery agreement provides that an employer who subcontracts for livery services in violation of the provision may be liable for contributions for the bargaining unit work performed.  Because Hursen admits to subcontracting for livery services in its motion for summary judgment, it necessarily follows that Hursen is liable for fund contributions on behalf of Leyden employees performing bargaining unit work.

We therefore conclude that the agreements are lawful, the language is unambiguous, and the history between the parties indicates that Moriarty is entitled to delinquent contributions to the Funds.

## CONCLUSION

For the foregoing reasons, Moriarty's motion for summary judgment is granted and Hursen's motion for summary judgment is denied.  We grant judgment in favor of

the Health and Welfare Fund and against Hursen in the total amount of $7,641.81, in favor of the Pension Fund and against Hursen in the total amount of $6,463.56, and in favor of the Legal Fund and against Hursen in the total amount of $151.27. These amounts represent the total of delinquent contributions, interest, liquidated damages, and audit costs to each Fund. Any additional awards Moriarty wishes to pursue may be brought by separate motion in conformity with the rules of this court.

_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated:   July 1, 2005